UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES HENDRIX, et al.,

    Plaintiffs,                                Case No. 2:09-cv-132
                                                            JUDGE GREGORY L. FROST
    v.                                             Magistrate Judge E.A. Preston Deavers

UNITED STATES OF AMERICA,

    Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) Plaintiffs' motion for summary judgment (Doc. # 22), Defendant's memorandum in opposition (Doc. # 26), and Plaintiff's reply memorandum (Doc. # 29);

(2) Defendant's motion for summary judgment (Doc. # 23), Plaintiffs' memorandum in opposition (Doc. # 27), and Defendant's reply memorandum (Doc. # 28); and

(3) a joint motion to amend the scheduling order (Doc. # 31).

For the reasons that follows, the Court **DENIES** Plaintiffs' motion (Doc. # 22), **GRANTS** Defendant's motion (Doc. # 23), and **DENIES AS MOOT** the joint motion to amend (Doc. # 31).

### I.  Background

Since 2000, Plaintiffs, James and Lori Hendrix, have owned the lot located at 2580 Sherwin road in Upper Arlington, Ohio.  After a number of years, Plaintiffs decided to demolish

1

the house that existed on that lot and to construct a new house.  They obtained two estimates for conducting the demolition, each of which was approximately $10,000.00.  Plaintiffs declined to accept either bid and instead contacted Lyndon Nofziger of the Upper Arlington Fire Division to discuss the city using their house for training and then demolishing the house.  Plaintiffs had retained the accounting firm of Deloitte & Touche regarding a possible donation of the house to the city that would result in the city demolishing the structure and then returning the real estate back to Plaintiffs.  In a March 2004 report, a Deloitte & Touche advisor analyzed the possible transaction and concluded, among other things, that "[d]onation of property to a fire department is aggressive and not explicitly sanctioned by the Internal Revenue Code."  (Doc. # 23-6, at 6.)

Plaintiffs obtained an appraisal of the Sherwin Road property and the house on that real estate.  Ann Ciardelli prepared the appraisal, which she signed on June 11, 2004.  Her appraisal indicated a value of $520,000.00 and included a provision that "[t]he intended use of this appraisal is to assist the owner in estimating the fair market value of the subject property."  (Doc. # 23-4, at 2-3.)

On June 29, 2004, Plaintiffs then entered into a contract with Upper Arlington.  This agreement provided that Plaintiffs granted the city permission "to use" the Sherwin Road property and the house for purposes of Fire Division training.  The contract also provided that "[t]he structure is to be burned and/or demolished as seen fit by the Fire Division for said training."  (Doc. # 23-1, at 1.)  Another provision provided that "[t]he City of Upper Arlington does not express any opinion regarding the tax consequences of this transaction" and advised Plaintiffs to consult with a tax advisor "regarding the availability of and requirements for taking any tax deduction."  (Doc. # 23-1, at 2.)

2

The city used the house from June 29, 2004, until October 29, 2004, at which time the house was demolished. Plaintiffs then proceeded to construct a new, larger house on their lot. Plaintiffs also reported a charitable contribution on their 2004 income tax return, claiming a deduction for the house in the amount of $287,400.00. The Internal Revenue Service disallowed the deduction and proceeded to assess a tax deficiency of $100,590.00. Plaintiffs unsuccessfully filed for a refund and then filed this 26 U.S.C. § 7422 action for a tax refund against Defendant, the United States of America, on February 24, 2009. (Doc. # 2.)

Both sides have moved for summary judgment. (Docs. # 22, 23.) After the parties resolved a mutual failure to submit proper summary judgment evidence, the motions are now ripe for disposition. The parties have also jointly filed a contingent motion to amend the case scheduling order, noting that should the Court conclude that Plaintiffs can take the claimed deduction, then a period of discovery on the value of the deduction is necessary. (Doc. # 31.)

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B.  Analysis

The parties' dispute presents four core issues, each of which is arguably potentially dispositive of this litigation.  The first issue is whether Plaintiffs have met the requirement of submitting a sufficient qualified appraisal.  The second issue is whether Plaintiffs filed a sufficient contemporaneous acknowledgment of the purported donation.  The third issue is whether the Internal Revenue Code precludes a deduction for the conduct involved here.  The fourth issue is whether Plaintiffs have otherwise established that they are entitled to a deduction. Because the first two of these issues prove dispositive, this Court need not and does not reach the remaining issues.

Defendant argues that it is entitled to summary judgment because Plaintiffs failed to obtain a qualified appraisal by the due date of their 2004 income tax return.  To support this argument, Defendant relies upon 26 U.S.C. § 170, which provides that "no deduction shall be

4

allowed under subsection (a) for any contribution of property for which a deduction of more than $500 is claimed unless such person meets the requirements of subparagraphs (B), (C), and (D), as the case may be, with respect to such contribution." 26 U.S.C. § 170(f)(11)(A)(I).  The referenced subparagraph (C) in turn provides:

> In the case of contributions of property for which a deduction of more than $5,000 is claimed, the requirements of this subparagraph are met if the individual, partnership, or corporation obtains a qualified appraisal of such property and attaches to the return for the taxable year in which such contribution is made such information regarding such property and such appraisal as the Secretary may require.

26 U.S.C. § 170(f)(11)(C).  Defendant is therefore correct in its threshold assertion that Plaintiffs were required to obtain a qualified appraisal and attach it to the 2004 tax return.

The statutory scheme addresses what constitutes the required "qualified appraisal" as follows:

> The term "qualified appraisal" means, with respect to any property, an appraisal of such property which--
>
> (I) is treated for purposes of this paragraph as a qualified appraisal under regulations or other guidance prescribed by the Secretary, and
>
> (II) is conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed under subclause (I).

26 U.S.C. § 170(f)(11)(E)(I).  This definition features two components.  First, the appraisal must be treated as a qualified appraisal by incorporated-by-reference Secretary of the Treasury regulations or guidance.  Second, a qualified appraiser must have conducted the appraisal using generally employed standards and in compliance with incorporated-by-reference Secretary regulations or guidance.

Section 170 also defines "qualified appraiser," providing:

> [T]he term "qualified appraiser" means an individual who–
>
> (I) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary,
>
> (II) regularly performs appraisals for which the individual receives compensation, and
>
> (III) meets such other requirements as may be prescribed by the Secretary in regulations or other guidance.

26 U.S.C. § 170(f)(11)(E)(ii). This definition similarly incorporates by reference regulations and requirements set forth by the Secretary.

The Code of Federal Regulations contains the relevant regulations. For example, 26 C.F.R. § 1.170A-13(c)(3)(i)(C) provides that in order to constitute a qualified appraisal, an appraisal document must include information required by 26 C.F.R. § 1.170A-13(c)(3)(ii). Among this required information is "[t]he date (or expected date) of contribution to the donee." 26 C.F.R. § 1.170A-13(c)(3)(ii)(C). Also required are

> [t]he terms of any agreement or understanding entered into (or expected to be entered into) by or on behalf of the donor or donee that relates to the use, sale, or other disposition of the property contributed, including, for example, the terms of any agreement or understanding that--
>
>> (1) Restricts temporarily or permanently a donee's right to use or dispose of the donated property,
>>
>> (2) Reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fundraising) any right to the income from the contributed property or to the possession of the property, including the right to vote donated securities, to acquire the property by purchase or otherwise, or to designate the person having such income, possession, or right to acquire, or
>>
>> (3) Earmarks donated property for a particular use[.]

6

26 C.F.R. § 1.170A-13(c)(3)(ii)(D). Additional information mandated for inclusion is "[t]he qualifications of the qualified appraiser who signs the appraisal, including the appraiser's background, experience, education, and membership, if any, in professional appraisal associations," 26 C.F.R. § 1.170A-13(c)(3)(ii)(F), as well as "[a] statement that the appraisal was prepared for income tax purposes," 26 C.F.R. § 1.170A-13(c)(3)(ii)(G). These and other components constitute the qualified appraisal, which "must be received by the donor before the due date (including extensions) of the return on which a deduction is first claimed . . . under section 170 with respect to the donated property . . . ." 26 C.F.R. § 1.170A-13(c)(3)(iv)(B).

Defendant points out that the appraisal submitted by Plaintiffs does not contain the expected date of contribution, the terms of the agreement between Plaintiffs and the city, the qualification of Plaintiffs' appraiser (including Ann Ciardelli's background, experience, education, and any membership in professional appraisal associations), and the required statement that the appraisal was prepared for income tax purposes. Defendant's evaluation of the appraisal's deficiencies is accurate. *See* Doc. # 23-4. In fact, in addition to failing to contain *any* of the identified, specifically required information, one provision of the appraisal arguably disavows by omission that the appraisal was prepared for income tax purposes. The appraisal indicates its "purpose and scope" by providing that "[t]he intended use of this appraisal is to assist the owner in estimating the fair market value of the subject property." (Doc. # 23-4, at 3.) Moreover, the argument that the inclusion of Ciardelli's license number on the appraisal implicitly represents her qualifications is simply without merit. *See Bruzewicz v. United States*, 604 F. Supp. 2d 1197, 1205 (N.D. Ill. 2009).

The end result of the foregoing omissions is that Ciardelli's appraisal fails to meet the

regulations incorporated into the statutory scheme, which means that by both the regulation and statutory definitions, the appraisal fails to constitute a "qualified appraisal."  This, in turn, means that Plaintiffs failed to satisfy the 26 U.S.C. § 170(f)(11)(C) requirements of obtaining a qualified appraisal of their property and attaching to the 2004 return requisite information required by the Secretary.  Such deficiencies result in violation of 26 U.S.C. § 170(f)(11)(A)(i), which, as noted, provides that "no deduction shall be allowed under subsection (a) for any contribution of property for which a deduction of more than $500 is claimed unless such person meets the requirements of subparagraphs (B), (C), and (D), as the case may be, with respect to such contribution."  The ends result is that Plaintiffs are not entitled to the claimed deduction.

  Plaintiffs contest this result, although they concede that their appraisal lacks several areas of content.  They argue that they substantially complied with the regulations and statutory scheme, however, and point to components of the appraisal that did include required information.  Defendant counters that it does not appear that the Sixth Circuit has recognized the substantial compliance doctrine in regard to taxpayer deductions and that, even if this Court were to assume that the doctrine could apply here, Plaintiffs have failed to demonstrate substantial compliance.

  This Court agrees that the substantial compliance doctrine cannot salvage Plaintiffs' case.  Contemplated application of the doctrine in this Circuit to Internal Revenue Code provisions has previously arisen in the context of statutory language that specifically provides for substantial compliance.  *See, e.g., Grable & Sons Metal Products, Inc. v. Darure Engineering & Mfg.*, 377 F.3d 592, 596 (6th Cir. 2004) (addressing a possible narrow application of the doctrine in light of 26 U.S.C. § 6339(b)(2)'s language permitting proceedings "substantially in accordance with the

provisions of law"). Although the Court is reluctant to read much if anything into such limited consideration of the doctrine by the court of appeals, the Court does note that the statute and regulations involved in the instant case do not similarly provide for substantial compliance.

Assuming *arguendo* that the doctrine indeed *could* apply in such taxpayer actions, the Court finds that the appraisal at issue wholly lacks even a modicum of content in critical areas to say that it substantially complies with numerous statutory and regulation mandates. The substantial compliance doctrine is not a substitute for missing entire categories of content; rather, it is at most a means of accepting a nearly complete effort that has simply fallen short in regard to minor procedural errors or relatively unimportant clerical oversights. The required content Plaintiffs neglected does not constitute such instances of technicalities.

Much of the content provides necessary context permitting the Internal Revenue Service to evaluate a claimed deduction. Without, for example, the appraiser's education and background information, it would be difficult if not impossible to gauge the reliability of an appraisal that forms the foundation of a deduction. The simple inclusion of an appraiser's license number does not suffice given that there are distinctions between appraisers that the required information targets. Another district court judge aptly summarized why the inclusion of only an appraiser's license number hardly constitutes substantial compliance:

> [The] contention that the license numbers of [the appraisers] suffice to establish that they were experienced and qualified appraisers misses the mark. If an appraiser's license number alone were adequate evidence of his or her qualifications, the Treasury Department's regulations would not specify, in addition to the license numbers (required by Reg. § 1.170A-B(c)(3)(ii)(E)), the need for qualitative information about the appraiser's background (separately specified in Reg. § 1.170A-13(c)(3)(ii)(F)). That qualitative requirement is hardly surprising, for it provides the IRS with some basis on which to determine whether the valuation in an appraisal report is competent and credible evidence to support what in some cases may be a very large tax saving.

9

*Bruzewicz*, 604 F. Supp. 2d at 1205. An absolute dearth of information concerning substantive content is not coming "close enough" to warrant invocation of the equitable doctrine. Nor does Plaintiffs' notably belated submission *as part of this litigation* of Ciardelli's qualifications serve to repair her earlier appraisal. Ciardelli may well be qualified now–the document attached to Plaintiffs' memorandum in opposition includes education obtained well after 2004–and she may have been qualified in 2004. (Doc. # 27-1.) But the submitted document does not speak to the issues involved in this litigation (or, as Defendant correctly summarizes, it "does not satisfy the requirements of the statute, its regulations, or its purpose"). (Doc. # 28, at 3.) The issues are what Plaintiffs were *required* to do and submit as part of the deduction process and what they *actually* did, not what they could have done or what wishfully reparative steps they have taken years after the fact.

Plaintiffs' wholesale noncompliance in regard to select categories of mandated information thus does not evince procedural missteps. Their failure to obtain an appraisal containing required content not only goes to the substantive essence of the deduction statute involved, but in fact defeats the essential or fundamental purpose of that statute–a shortcoming that necessarily defeats Plaintiffs' successful reliance on the substantial compliance doctrine. *Cf. F.E. Schumacher Co., Inc. v. United States*, 308 F. Supp. 2d 819, 832 (N.D. Ohio 2004) (declining to apply substantial compliance doctrine in tax case where the plaintiff failed to comply with the substantive purpose of the Internal Revenue Code statute involved). Nowhere is it more apparent that Plaintiffs' actions negate the equitable safe haven they pursue than in recognizing that the purpose of the qualified appraisal is to present an understandable rationale

for the claimed deduction, and the deduction of $287,400.00 claimed here hardly matches the $520,000.00 appraisal offered.

One might reasonably be able to speculate why such a difference might exist. Plaintiffs explain that they subtracted the value of the land, which is a likely explanation even if the auditor website upon which Plaintiffs rely values the house at much less than $287,400.00. But speculation aside, the purpose of the qualified appraisal is to "show the work" so as to obviate the injection of unfounded guessing into the tax scheme. The facts *sub judice* are therefore closer to the Tax Court case of *Friedman v. Commissioner*, T.C. Memo 2010-45 (Mar. 11, 2010), than to that court's case of *Bond v. Commissioner*, 100 T.C. 32 (1993).

Even assuming its potential application here as opposed to requiring strict compliance, the substantial compliance doctrine cannot equitably apply. Plaintiffs' appraisal is insufficient and precludes their claimed deduction. Additionally, even if this first ground did not resolve the litigation, the Court concludes that Defendant is still entitled to summary judgment under its second rationale: that Plaintiffs failed to file a contemporaneous acknowledgment as required by 26 U.S.C. § 170.

That statute provides that "[n]o deduction shall be allowed under subsection (a) for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B)." 26 U.S.C. § 170(f)(8)(A). The referenced subparagraph (B) in turn requires that the acknowledgment include:

> (i) The amount of cash and a description (but not value) of any property other than cash contributed.
>
> (ii) Whether the donee organization provided any goods or services in consideration,

>in whole or in part, for any property described in clause (i).
>
>(iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) or, if such goods or services consist solely of intangible religious benefits, a statement to that effect.

26 U.S.C. § 170(f)(8)(B)(i)-(iii).  Additionally, the statutory scheme explains that "an acknowledgment shall be considered to be contemporaneous if the taxpayer obtains the acknowledgment on or before the earlier of . . . the date on which the taxpayer files a return for the taxable year in which the contribution was made, or . . . the due date (including extensions) for filing such return."  26 U.S.C. § 170(f)(8)(C)(i)-(ii).

Plaintiffs argue that they met this requirement of a quid pro quo disclosure because there was no such exchange, while Defendant again asserts dispositive deficiencies in Plaintiffs' conduct.  Defendant directs this Court to various depositions on the contemporaneous written acknowledgment issue, and Plaintiffs' depositions indeed support that they may not have been aware of this requirement despite employing Deloitte & Touche.  What matters is not whether Plaintiffs understood the label assigned to the requirement, however, but whether they met the requirement.  And it does not matter whether Plaintiff actually did receive any goods or services.  What matters is whether, as required, they disclosed *whether* the city provided any goods or services in consideration.

Here, again, *Bruzewicz v. United States*, 604 F. Supp. 2d 1197, proves instructive.  In that case, as here, the taxpayers failed to receive a contemporaneous written acknowledgment that stated whether they had received any goods or services, in whole or in part, for their contribution and, if so, that also provided a good faith estimate of the value of these goods or services.  The *Bruzewicz* district court judge explained:

> Is the requirement of a written acknowledgment "either an unimportant requirement or one unclearly or confusingly stated in the regulations or the statute," so that the [taxpayers'] purported compliance can even be considered "substantial," let alone strict? Simply to state that question compels a "no" answer.
>
> First, the statute is neither unclear nor confusing about the need for a written acknowledgment. It explicitly defines the situations in which a contemporaneous written acknowledgment is required (for any contribution of $250 or more), and it spells out chapter and verse as to what must be included in the acknowledgment and as to when the acknowledgment must be received (Section 170(f)(8)(A)-(C)).
>
> Nor can it be said that the statutory requirement is "unimportant." To begin with, its very inclusion in the Code provision itself, rather than in accompanying regulations promulgated by the Treasury Department, signals a negative answer to that inquiry. And that result is underscored by the nature of the statutorily stated consequence: "No deduction shall be allowed . . . unless the taxpayer substantiates the contribution" by the specified contemporaneous written acknowledgment by the donee organization. Lacking that, the IRS is faced with the absence of even a prima facie showing of the existence of a substantial charitable contribution. Even though our tax system is basically one of self-reporting, the statutory establishment of a watershed–$250–beyond which validation is required in addition to a taxpayer's self-declaration cannot be said to be unimportant.

*Id.* at 1204-05. Similarly, because none of the documents produced in this case, including the June 29, 2004 contract between Plaintiffs and the city, satisfies 26 U.S.C. § 170(f)(8)(B), Plaintiffs in turn have failed to avoid the 26 U.S.C. § 170(f)(8)(A) bar on their claimed deduction.

Either of the foregoing grounds ends this litigation. Thus, as noted, the Court declines to reach the remaining moot issues involved in the parties' dispute. The consequent result of the foregoing analysis is that, regardless of whether taxpayers may be able to claim a deduction for the type of donation involved in this case–a question this Court need not ultimately answer today–the deficient manner in which Plaintiffs pursued such a donation here proves dispositive. Defendant is therefore entitled to summary judgment, while Plaintiffs are not.

### III.  Conclusion

This Court **DENIES** Plaintiffs' motion for summary judgment (Doc. # 22), **GRANTS** Defendant's motion for summary judgment (Doc. # 23), and **DENIES AS MOOT** the joint motion to amend (Doc. # 31).  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE